IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
AT SOUTH BEND

**GINGER RICH**
AND
**MICHAEL RICH**
404 NORTH MULFORD RD.
LINDENWOOD, IL 61049

PLAINTIFFS

- VS. -

THOR MOTOR COACH, INC.
C/O CT CORPORATION SYSTEM, S/A
334 NORTH SENATE AVENUE
INDIANAPOLIS, IN 46204

DEFENDANT

CASE NO.

COMPLAINT AND JURY DEMAND

---

## PRELIMINARY STATEMENT

1. This case involves a defective 2025 Thor Delano 24XL-DG recreational vehicle ("RV") that was built and warranted by Defendant Thor Motor Coach, Inc. ("Thor"), and which Defendant Thor failed to repair despite about 3 different repair opportunities over more than 248 days during the term of Defendant's warranty.

2. This case involves claims asserted under the Indiana Uniform Commercial Code and the Magnuson Moss Warranty Act.

3. Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 USC 2301 et seq, invoking 28 USC 1331, and/or the amount in controversy is more than $75,000 and is between citizens of different states, invoking 28 USC 1332.

4. The subject RV was sold wholesale by Defendant to its authorized retail seller, General RV Center in Illinois; acquired by Plaintiffs in Illinois and was defective when acquired; ineffective repair attempts were made upon the subject RV by Defendant's authorized representative dealership in Illinois; the place where the relationship of the parties arose is Illinois because the warranty obligations of Defendant were received by Plaintiffs with the purchase of the subject RV in Illinois.

5. Prior to the sale of the subject vehicle to Plaintiffs, Defendant made arrangements for compensation of its designated representatives for the performance of warranty-covered service and repairs upon vehicles it manufactured, in accord with 15 USC 2307. In its warranty and/or owner manual for the subject RV the Defendant instructed Plaintiffs that in the event of a defect Plaintiffs were to "contact your independent authorized selling dealer (to the extent possible) or local independent authorized dealer to schedule repairs…" and, under 15 USC 2307, Defendant hereby designated each authorized service center who worked on the subject vehicle to perform the manufacturer's duties under the written or implied warranties. Subsequent to each request by Plaintiffs for repair of a condition or defect on the subject vehicle covered by Defendant's express or implied warranties, if the repair request was approved by Defendant each such designated representative was compensated by the Defendant for the designated representative's performance of the Defendant's duties.

6. Upon information and belief, Defendant controlled and/or directed the acts of each authorized repair facility who attempted to perform warranty repair work on the subject RV, by Defendant's control and direction of the speed and processing of

warranty repairs and parts distribution from its factory in Indiana; Defendant controlled and directed the process by which its authorized repair facilities performed warranty-covered repairs by its acts and omissions which include but are not limited to: (1) requiring authorized retail sellers of its products to apply for and be granted that right by agreeing to and proving they would and could meet and maintain Defendant's management, business, internal sales and service structuring, processes, procedures, facility location and size and characteristics, reputation, profit, sales quotas, sufficient level and quality of sales personnel staffing, departmentalization of work activities and successfully pass Defendant's periodic reviews and/or inspections of all those aspects of the retail seller's business operation and activities, including adherence to Defendant's policies and procedures related to the sale and servicing of Thor Motor Coach products and the business relationship between Defendant and its authorized retail seller and servicer of Defendant products and allowing Defendant to have access to the authorized seller and repair facility's property; and (2) by requiring authorized repair facilities to agree to and prove that they would and could meet and maintain Defendant's service management service and parts departments structuring, processes, procedures, facility location and size and equipment and service bays and characteristics, reputation, profit, sales quotas, sufficient level and quality of administrative repair personnel staffing and training, departmentalization of work activities, purchases of specific parts and/or equipment that was supplied, provided, or recommended by Defendant for use in the servicing and warranty repair of Defendant products, and to allow Defendant to access the property and business facilities of the

authorized retail sales and the authorized repair facility, and successfully pass Defendant's periodic reviews and/or inspections of all those aspects of the retail seller's business and service operation and activities, including adherence to Defendant's policies and procedures related to the sale and servicing of Defendant's products and the business relationship between Defendant and its authorized retail seller and servicer of Defendant products, including but not limited to requiring pre approval of the work, requiring photographs of work needing to be done, establishing the manner in which its authorized repair facilities would submit warranty claims for payment, limiting the reimburseable time for warranty repairs to that allowed by for specific repair tasks as stated in publications submitted to its authorized repair facilities, establishing a limited hourly rate and/or total payment amount for reimbursement for warranty repairs, refusing to pay for "comeback" warranty repairs that resulted from failure of authorized repairs to "hold up" when done the way Defendant controlled and/or directed, requiring "comeback" warranty repair claims to be identified by its authorized repair facilities when submitting warranty claims for payment, and one or more other manners of instructions, directions, limitations, in addition to other similar such requirements. Defendant further controlled and directed the operation of its authorized retail sales and service representatives by reserving to itself the discretionary right to terminate the representative relationship of any authorized seller or servicer of Defendant's products for any reason, including if such authorized retail seller or repair facility failed, in the opinion of Defendant, to adequately adopt, employ, implement, or otherwise follow Defendant's requirement, instruction, directive, recommendation,

policy, procedure, fail to meet a minimum amount of quota of retail sales or service activity and/or profit, or otherwise, etc.

7. As a result of the above, the authorized retail seller and/or every authorized repair facility that worked on the subject RV were controlled and/or directed by Defendant with regard to one or more of the acts and/or omissions which they each committed in regard to the subject RV

**IDENTIFICATION OF PARTIES**

8. Ginger Rich and Michael Rich are natural individuals domiciled in, residing in, and citizens of Illinois, and are each a consumer and buyer within the meaning of applicable laws.

9. Defendant Thor is a Delaware corporation, authorized to do business and doing business in Indiana and Illinois, and whose principal place of business and citizenship is in Indiana, and is a warrantor of a recreational vehicle that Plaintiffs acquired and a supplier and a merchant.

10. The RV at issue in this case was manufactured as a complete vehicle in Indiana, for distribution in Huntley, Illinois, and was warranted in whole or part by Defendant Thor.

11. Plaintiffs acquired the RV from General RV Center ("General RV"), in Huntley, Illinois. At all times relevant, General RV was a supplier, merchant and an authorized representative and agent of Defendant Thor in Indiana for sale of Thor products in Indiana. At all times relevant, General RV was authorized by Defendant Thor to act for it as its authorized agent and representative in Illinois in all respects related to the sale and repair of the vehicle involved in this case,

and hundreds of other Thor products sold by General RV.

**FIRST CLAIM: BREACH OF WARRANTY AND/OR CONTRACT**

12. This case involves a defective 2025 Thor Delano 24XL-DG that Defendant Thor warranted and contracted to warrant but which it was not able to repair within a reasonable number of chances or a reasonable amount of time and whose warranty and/or contract Defendant Thor breached.

13. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

14. This claim is for breach of warranty and/or contract by Defendant Thor in Indiana and/or Illinois.

15. As a result of the above, and the allegations below, inter alia, Defendant Thor breached its warranty and/or contract to the injury of Plaintiffs.

16. On or about May 21, 2025, the parties entered into a consumer transaction, in that Plaintiffs agreed to acquire from General RV Center, and General RV Center agreed to sell to Plaintiffs, under the terms of a Retail Installment Contract with Huntington National Bank, and Defendant contracted and/or agreed to warrant the subject RV to be free from defects and/or that it would repair and/or replace any defect which it contracted and/or warranted against, the goods being a certain 2025 Thor Delano 24XL-DG recreational subject RV believed to bear VIN # W1X9N33Y9RN297233, and whose total cost was about $169,111.15.

17. Plaintiffs acquired the 2025 Thor Delano 24XL-DG in reliance on the existence of a written warranty and/or contract from Defendant Thor, and on email and

advertising representations and/or warranties of Defendant Thor.

18. The purpose of Defendant Thor's warranty was (a) to get the RV fixed within a reasonable amount of time and within a reasonable number of attempts if a defect arose, and (b) to give Plaintiffs confidence in the reliability and quality of the RV, and (c) to give Plaintiffs confidence in the Defendant Thor's representations about the subject RV and the RVs Defendant Thor designed and built, and (d) to give Plaintiffs confidence in Defendant Thor itself as a responsible company that lived up to its representations, its word, and its warranties.

19. After acquiring the vehicle, Plaintiffs discovered that it did not conform to the representations of Defendant Thor inasmuch as it developed continuing malfunctions, defects and problems.

20. The defects in the RV, which were substantial and existed in the materials and workmanship caused by Thor, included, but are not limited to:

- Generator Inoperative/Generator Choking Out/Fuel Line Concern;
- Fuel System Malfunction, including reported diesel/fuel leakage;
- Check Engine Oil/No Oil Concern;
- Mice Concerns/Mice Infestation;
- A/C Defect, including A/C or A/C Fan Coming On When Heat Is Turned On;
- Heating Defect, including Very Little Heat From Front Heat Register;
- Spider Cracking Paint On Top of Coach;
- AGS Offline;
- 110V Not Charging Chassis Battery;
- LP Gauge On Monitor Screen Randomly Reading LP Level.

21. Defendant was notified of defects and non-conformities in the subject RV and the authorized repair facility's failed repair attempts repeatedly prior to filing this

case.

22. In all respects, Plaintiffs substantially if not completely performed their obligations under the warranty from Defendant and Defendant did not perform its obligations, as set forth herein above and below.

23. Because of the contract and/or warranty-covered defects, Plaintiffs notified Defendant and/or one of its authorized servicing dealers of the numerous defects and on various dates delivered the subject RV into the possession of Defendant and/or one of its authorized servicing dealers at their cost and/or expense beginning shortly after the sale.

24. On or about June 16, 2025, Plaintiffs contacted General RV Center, an authorized Thor dealer, regarding warranty repairs, but General RV Center was unwilling to schedule a repair until July 1, 2025. This was inconsistent with General RV Center's prior promise about warranty repairs made at the time of sale. On or about July 1, 2025, Plaintiffs presented the RV to General RV Center, an authorized Thor dealer, for repair of the following defect under the Thor warranty:

- Generator (Loss of Fuel);
- Broken Drawer;
- Broken Cabinet Door;
- Missing Caulk Between Chassis and House;
- Broken Mirror; and
- Broken Marker Lights.

25. On or about October 24, 2025, Plaintiffs contacted General RV Center, an authorized Thor dealer, regarding warranty repairs, and an appointment was made for the earliest date General RV Center would give Plaintiffs– November

18, 2025.

26. On or about November 18, 2025, Plaintiffs presented the RV to General RV Center, an authorized Thor dealer, for repair of the following defects under the Thor warranty:

- Generator Inoperative/Generator Choking Out/Fuel Line Concern;
- Fuel System Malfunction, including reported diesel/fuel leakage;
- Check Engine Oil/No Oil Concern;
- Mice Concerns/Mice Infestation (discovered February 4, 2026 while still on the General RV Center lot for repairs);
- A/C Defect, including A/C or A/C Fan Coming On When Heat Is Turned On;
- Heating Defect, including Very Little Heat From Front Heat Register;
- Broken AGS Glass Display;
- Leak in Ceiling Above Shower;
- Discolored Floor in Bedroom.

27. On or about March 2, 2026, while the RV was still at General RV Center for repairs, Plaintiffs agreed to allow Thor an opportunity to repair the RV at its factory service center in Indiana.

28. Upon information and belief, Thor picked the RV up from General RV Center for repairs on or about March 14, 2026 and it arrived at the Thor factory service center on or about March 18, 2026 for warranty repairs.

29. Thus, on or about March 18, 2026, Plaintiffs presented the RV to the Thor factory service center for repair of the following defects under the Thor warranty:

- Generator Inoperative/Generator Choking Out/Fuel Line Concern;
- Fuel System Malfunction, including reported diesel/fuel leakage;
- Check Engine Oil/No Oil Concern;
- Mice Concerns/Mice Infestation;
- A/C Defect, including A/C or A/C Fan Coming On When Heat Is Turned On;
- Heating Defect, including Very Little Heat From Front Heat Register;

- Spider Cracking Paint On Top of Coach;
- AGS Offline;
- 110V Not Charging Chassis Battery;
- LP Gauge On Monitor Screen Randomly Reading LP Level.

30. Defendant was notified of defects and non-conformities in the RV and the authorized dealers' failed repair attempts repeatedly prior to filing this case.

31. In all respects, Plaintiffs substantially if not completely performed their obligations under the RV's warranty from Defendant Thor, and Defendant Thor, did not perform its obligations, as set forth herein above and below.

32. Because of the contract and/or warranty-covered defects, Plaintiffs notified Defendant Thor, and/or one of its authorized dealers of the numerous defects and on various dates delivered the RV into the possession of Defendant Thor and/or one of its authorized dealers at Plaintiffs' cost and/or expense beginning shortly after the sale.

33. Plaintiffs had numerous telephone calls and emails with Defendant Thor, and its authorized dealers and/or other entities asking for help with the RV.

34. After the RV had been in the repair shop for more than over 352 days since its acquisition:

    a. Plaintiffs requested that an independent repair shop of their choice repair the defects and have Defendant Thor pay it for the repairs, but the independent repair shop would not do that; and

    b. Plaintiffs notified Defendant Thor, that the RV's defects were incurable and they wanted Defendant Thor, to pay them diminished value damages and give them their money back, but the Defendant Thor, would not do

that.

35. In spite of Defendant Thor Motor Coach Inc.'s obligations, when Plaintiffs complained of the inability of Defendant Thor, and its authorized dealerships to repair the vehicle, Defendant Thor, did not repair or replace or repurchase the subject vehicle.

36. Prior to filing this case, including on July 7, 2026, and one or more other dates, Plaintiffs provided notice to Defendant Thor, about its failures to live up to its warranty and/or contract.

37. Instead of performing as represented, Defendant Thor, did not repair all defects in the vehicle once and for all time. In short, the defects were not repaired, Plaintiffs lost all confidence in the reliability and quality of the RV, and Plaintiffs lost all confidence in Thor, as a company.

38. As a result of the above, and more, the repair remedy and back up remedy in Thor's limited warranty failed of its essential purpose, Plaintiffs complied and substantially complied with the limited warranty terms, but Thor did not, and Thor breached its warranty.

39. The back up remedy in the Thor warranty is illusory and unenforceable.

40. As a result Defendant Thor, breached its express and/or implied warranties and/or contract.

41. As a result, Defendant Thor's warranty and/or contract failed of its essential purpose and any limitations contained within the warranty and/or contract are null and void and Plaintiffs are entitled to all applicable legal and equitable remedies in law.

42. In addition, any limitations contained within the warranty and/or contract are null and void and without consideration and Plaintiffs are entitled to all applicable legal and equitable remedies in law.

43. Through its advertising and otherwise, Defendant Thor, represented that the recreational vehicles it built were fit for the purpose for which they were designed, that they are safe and suitable vehicles for their intended designed use, reliably operable for private transportation and Plaintiffs acquired the vehicle in reliance upon the belief that Defendant Thor, possessed a high degree of manufacturing skill and judgment.

44. Through its advertising and otherwise, Defendant Thor, represented that the recreational vehicles which it manufactured were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used, and Plaintiffs relied on such, but the vehicle involved in this case was not, however, of merchantable quality.

45. The malfunctions and defects in the vehicle severely and substantially impaired its use and/or safety and/or value to Plaintiffs.

46. Defendant Thor's failure to timely fix all of the vehicle's defects has caused Plaintiffs to lose confidence in the reliability of the subject motor vehicle and in the ability of Defendant Thor, to repair the vehicle's defects.

47. Plaintiffs provided Defendant Thor, and/or one or more of its authorized dealers with a reasonable number of opportunities to repair the vehicle but they have each neglected, failed, refused or otherwise been unable to do so within a reasonable amount of time or a reasonable number of attempts.

48. As a result of the above facts, Defendant Thor, breached its warranties and/or contract and/or representations with respect to the vehicle.

49. One or more of the defects and malfunctions in the vehicle were covered under the terms of Defendant Thor's warranties and/or contract, and Defendant Thor, failed to repair the vehicle, thereby diminishing the use and/or safety and/or value of the vehicle.

50. Defendant Thor, and/or one or more of its authorized dealers had notices of the breaches of the warranty and/or contract and the defective condition of the subject motor vehicle within a reasonable time.

51. Plaintiffs suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of Defendant Thor's authorized representatives to repair or replace the vehicle or refund its price.

**SECOND CLAIM: MAGNUSON MOSS WARRANTY ACT**

52. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

53. This claim is for breach of express and/or implied warranties and/or contract of warranties and/or Defendant Thor's violation of its obligations under the Magnuson Moss Warranty Act, 15 U.S.C. 2301, et seq, including but not limited to its obligations to comply with its warranties and/or contract and/or to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and its applicable regulations.

54. As a result of the above, among other things, Defendant Thor, has breached its

obligations under the Warranty Act and/or its applicable disclosure and/or other regulations.

55. As a result of the above, among other things, Defendant Thor, breached its obligations to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and the applicable Code of Federal Regulations.

56. As a result of the above, inter alia, Defendant Thor, is in violation of the Warranty Act.

**WHEREFORE**, judgment is demanded against Defendant as deemed proper and lawful by the Court, cumulatively and/or alternatively as follows:

## PRAYER FOR RELIEF

1. On the first claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial;

2. On the second claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

## ALTERNATIVE PRAYER FOR RELIEF

Or, in the alternative to the damages set forth in the prayer above on any appropriate claim as proven by the evidence and allowed by law, rescission and/or revocation of acceptance plus all damages and/or statutory remedies and relief as deemed proper, equitable and lawful by the Court, for each and every violation which may be proven at trial;

**Plus** on each and every claim, expenses of suit and litigation, interest from the date of acquiring the RV, and an Order finding Plaintiffs to have rescinded and/or revoked acceptance, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiffs demand trial by jury on all claims and issues.

Respectfully submitted,

/s/ Elizabeth Ahern Wells
ELIZABETH AHERN WELLS
Attorney for Plaintiffs
8250 Washington Village Drive
Dayton, OH 45458-1850
Telephone: 937.432.9500
Fax: 937.432.9503
Email: Beth@BurdgeLaw.com

Z:\data\RIch, Michael & Ginger\Core Pleadings\Core Complaint Thor 100226 bw.wpd